WO

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adonia Holding GmbH, | No. CV-14-01223-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Adonia Organics LLC, et al., | |
| Defendants. | |

Pending before the Court is the Motion to Dismiss of Defendants Adonia Organics LLC, Dr. Marc Franco Tahilian, and Jane Doe Franco. (Doc. 14.) For the following reasons, the Motion is denied.

## BACKGROUND

This action arises from business disputes between Defendant Adonia Organics LLC ("Adonia Organics"), an Arizona limited liability company, and Plaintiff Adonia Holding GmbH ("Adonia Holding"), a private company incorporated in Austria. In its First Amended Complaint ("FAC"), Adonia Holding alleges that Dr. Marc Franco Tahilian, a representative of Adonia Organics, promised Adonia Holding that it could become the exclusive dealer of Adonia products in Eastern Europe. Tahilian also represented to Adonia Holding that all of Adonia Organics' resellers in Europe were bound by contract to sell only within their predetermined geographic boundaries.

In 2013, Adonia Holding and Adonia Organics orally agreed that Adonia Holding would be given the exclusive right to sell Adonia products in Serbia, Bosnia, Herzegovina, Montenegro, Romania, Poland, the Czech Republic, and Slovakia.

1   Based on this oral agreement, Adonia Holding traveled to these countries, created
2   affiliated companies, registered the products, retained the services of public relations
3   companies, advertised, held press conferences, and obtained celebrity endorsements.
4   Adonia Holding also bought Internet domains, began creating platforms for online sale of
5   Adonia products, and made plans to meet with a pharmacy distributor in Poland.

6   On August 30, 2013, Adonia Holding alleges that it and Adonia Organics entered
7   into a written distributorship agreement entitled the Eastern European Reseller
8   Agreement (the "Agreement"). The Agreement stated that Adonia Holding would be
9   given the exclusive right to sell Adonia products in Eastern Europe "upon its initial
10  purchase of ADONIA products" so long as Adonia Holding made "all effort to achieve
11  product registration with these Eastern European Countries within 90 days of the signing
12  of [the Agreement],"—November 28, 2013. (Doc. 13, Ex. A.) In addition, the Agreement
13  required Adonia Holding to order 39,500 units over a 21-day period after obtaining
14  product registration in three countries. Adonia Holding registered the products in
15  Romania, Poland, and Serbia by the date required.

16  From September through December 2013, Adonia Holding became aware that
17  Quad A Concept GmbH ("Quad A"), a Germany-based Adonia products reseller, had
18  begun selling Adonia products in Eastern Europe. Quad A directly or through partner
19  companies launched several online shops targeted at Eastern Europe, held a press
20  conference in Romania, and sold products to customers in Eastern Europe. Adonia
21  Holding sent several emails to Adonia Organics requesting intervention, and Adonia
22  Organics told Quad A and some of the partner companies to cease and desist. However,
23  Adonia Organics did not pursue any legal remedies against Quad A, and after more
24  instances of Quad A selling products in Eastern Europe, Adonia Organics did not
25  continue to request Quad A to cease. Adonia Organics did make assurances to Adonia
26  Holding that it would try to remedy the situation, but Quad A continued to sell Adonia
27  products into Eastern Europe.

28  During this same time, Adonia Holding purchased 890 units of product from

Adonia Organics. Although Adonia Holding alleges it was ready and willing to purchase the full 39,500 units called for in the Agreement, it chose not to because Adonia Organics did not ensure Adonia Holding's exclusivity in Eastern Europe. Doc. 13 at ¶ 55. Adonia Holding initiated suit on June 3, 2013, bringing claims of breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment against Adonia Organics. In addition, Adonia Holding brought claims of fraudulent misrepresentation and consumer fraud against Adonia Organics, Dr. Marc Franco Tahilian, and Dr. Tahilian's wife based on their community estate.

## DISCUSSION

## II.    Legal Standard

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 555.

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not

sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

### A.     Count One: Breach of Contract

#### 1.     Choice of Law

Adonia Organics first claims that the Agreement is governed by the Convention on the International Sale of Goods ("CISG"). The CISG provides applicable law for contracts for the "sale of goods . . . between parties whose places of business are in different states." United Nations Convention on Contracts for the International Sale of Goods art. 1, Apr. 11, 1980, S. Treaty Doc. No. 98-9, 19 I.L.M. 668. It is undisputed that the United States and Austria are signatories to the CISG and that Adonia Holding and Adonia Organics are, therefore, members of different states.

There is very little case law on the applicability of the CISG to distributorship agreements. However, all courts that have considered the question have either held or suggested that the CISG does not govern distributorship agreements, which entail much more than the simple sale of goods.[1] *See Helen Kaminski Pty., Ltd. v. Mktg. Australian Products, Inc.*, No. 96B46519, 1997 WL 414137, at *3 (S.D.N.Y. July 23, 1997); *Viva Vino Imp. Corp. v. Farnese Vini S.r.l*, No. CIV.A. 99-6384, 2000 WL 1224903, at *1 (E.D. Pa. Aug. 29, 2000); *Amco Ukrservice v. Am. Meter Co.*, 312 F. Supp. 2d 681, 687 (E.D. Pa. 2004). At the very least, these cases stand for the proposition that an agreement must specify the price or types of goods to be sold before the CISG will apply. *See Helen Kaminski*, 1997 WL 414137, at *3 ("The identification in the Distributor Agreement of certain goods—about which there is no claim of breach—is insufficient to bring the

---

[1]    Adonia Holding also contends that the CISG is inapplicable because the Agreement contains a choice of law provision stating that Arizona law applies. Adonia Organics relies on a nonbinding case for the proposition that such a broad choice of law provision does not provide sufficient evidence of the parties' intent to opt out of the CISG. *See Asante Technologies, Inc. v. PMC-Sierra, Inc.*, 164 F. Supp. 2d 1142 (N.D. Cal. 2001). The Court finds *Asante* distinguishable because it concerns a battle of the forms between two competing contracts, each with a separate choice of law provision. In contrast, the present case concerns a single contract with a single choice of law provision, showing a clear intent by both parties to apply Arizona law. Regardless of the parties' contentions and the reasoning in *Asante*, the CISG does not apply for the reasons stated in this Order.

1   Distributor Agreement within coverage of the CISG."). Finding no contrary rulings, the
2   Court accepts the reasoning of these cases. In the present case, although the Agreement
3   does contain a minimum quantity of goods to be purchased by Adonia Holding, it does
4   not specify the price of the goods or the types of goods that are to be sold. Because the
5   Agreement is not a contract for the sale of goods as envisioned by the CISG, the CISG
6   does not apply.

7       Here, Arizona law applies because the Agreement explicitly states that it "shall be
8   governed by the laws of the State of Arizona." (Doc. 13, Ex. A.) Although Arizona courts
9   have not yet decided whether the UCC applies to distributorship agreements, the Ninth
10  Circuit has held "that Arizona would follow the majority of states and apply the UCC" to
11  such agreements. *Hibco Supply, Inc. v. Marvin Windows, Inc.*, 213 F.3d 642 (9th Cir.
12  2000); *see also Paulson, Inc. v. Bromar, Inc.*, 775 F. Supp. 1329, 1333 (D. Haw. 1991)
13  ("[T]here seems to be a clear precedent in most other jurisdictions that the UCC does
14  apply to distributorship agreements."). Arizona's version of the UCC will, therefore,
15  apply to Adonia Holding's contract claim.

16              **2.       Sufficiency of the Contract Claim**

17      Adonia Organics asserts that the FAC should be dismissed based on the fact-based
18  argument that Plaintiffs never qualified with the quantity of purchases required by the
19  contract's exclusivity terms. While normally such arguments are not appropriately
20  asserted on motions to dismiss, the FAC apparently asserts a claim for anticipatory
21  breach rather than for actual breach. Plaintiff apparently admits that it never ordered the
22  ultimate quantity required for exclusivity, but it does assert that it was ready, willing, and
23  able to do so. It alleges that it did not do so because Defendants were unable to provide
24  them with exclusivity "upon [their] initial purchase of ADONIA products" and were
25  unable to continue to ensure exclusivity for any future purchases as promised. (Doc. 13 at
26  4.) It, therefore, placed no such orders and sued for anticipatory breach. "To bring an
27  action for the breach of [a] contract, the plaintiff has the burden of proving the existence
28  of the contract, its breach and the resulting damages." *Graham v. Asbury*, 112 Ariz. 184,

185, 540 P.2d 656, 657 (1975) (citing *Lorden v. Snell*, 39 Ariz. 128, 4 P.2d 392 (1931)). A.R.S. § 47-2610 states that an aggrieved party may "suspend his own performance" of a contract when the other party "repudiates the contract with respect to a performance not yet due" and when "the loss of [performance]" will substantially impair the value of the contract to the other." In addition, A.R.S. § 47-2609 allows a party to suspend performance if doing so would be "commercially reasonable" after "in writing demand[ing] adequate assurance of due performance."

Taking the allegations in Adonia Holding's FAC as true, it has adequately pled the existence of the Agreement, its repudiation, and the resulting damages. The FAC concedes that Adonia Holding suspended its purchase of 39,500 units of Adonia product. However, it also alleges that it did so only after Adonia Organics did not ensure the exclusivity of the Eastern European Markets. Under Arizona law, "to recover damages for anticipatory breach, the injured party need only show that he had the ability to perform his own obligations under the agreement." *United California Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 283, 681 P.2d 390, 435 (Ct. App. 1983). In addition, although Adonia Organics did give assurances in some instances that it would pursue legal remedies against Quad A, it did not give assurances as to all of Adonia Holding's complaints about Quad A's encroachment into Eastern Europe. Adonia Holding has, thus, adequately pled that it was entitled to suspend its performance of the Agreement pursuant to both A.R.S. § 47-2610 for Adonia Organics' anticipatory repudiation and A.R.S. § 47-2609 for Adonia Organics' refusal to give adequate assurances.

**B.    Count Two: Breach of Good Faith and Fair Dealing**

Adonia Organics' contends that Adonia Holding's breach of the duty of good faith and fair dealing claim should be dismissed because its breach of contract claim is insufficient. *See Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986) ("The essence of [the duty of good faith and fair dealing] is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship."). Because Adonia Holding has sufficiently pled a contract

1   claim, its breach of good faith and fair dealing claim is also sufficient. Adonia Organics'

2   Motion to Dismiss is, therefore, denied as to Count Two.

3       **C.   Count Three: Unjust Enrichment**

4        Adonia Organics next claims that Adonia Holding's unjust enrichment claim

5   should be barred by the economic loss rule ("ELR"). The ELR is a common law rule,

6   adopted by Arizona courts, which limits plaintiffs from seeking tort remedies in addition

7   to "contractual remedies for purely economic loss from [defendants'] alleged failure to

8   adequately perform [their] promises under [a contract]." *Cook v. Orkin Exterminating*

9   *Co.*, 227 Ariz. 331, 335, 258 P.3d 149, 153 (Ct. App. 2011*); see also Salt River Project*

10  *Agric. Improvement and Power Dist. v. Westinghouse Elec. Corp.*, 143 Ariz. 368, 694

11  P.2d 198 (1984) (adopting the ELR in Arizona); *Flagstaff Affordable Hous. Ltd. P'ship v.*

12  *Design Alliance, Inc.*, 223 Ariz. 320, 326, 223 P.3d 664, 670 (2010). There are, however,

13  no cases extending application of the ELR to unjust enrichment, which is a quasi-contract

14  remedy. *See Murdock-Bryant Const., Inc. v. Pearson*, 146 Ariz. 48, 53, 703 P.2d 1197,

15  1202 (1985) ("[A] party may be liable to make restitution for benefits received, even

16  though he has committed no tort and is not contractually obligated to the plaintiff."). In

17  the present case, because there is no compelling reason to extend the ELR beyond where

18  Arizona courts have applied it, Adonia Holding's unjust enrichment claim is not barred.

19  Adonia Organics' Motion to Dismiss is, therefore, denied as to Count Three.

20      **D.   Count Four: Fraudulent Misrepresentation**

21       Adonia   Organics   next   contends   that   Adonia   Holding's   fraudulent

22  misrepresentation claim should be barred by the ELR. There is some debate about

23  whether the ELR bars fraud claims. *See KD & KD Enterprises, LLC v. Touch*

24  *Automation, LLC,* No. CV-06-2083-PHX-FJM, 2006 WL 3808257, at *2 (D. Ariz. Dec.

25  27, 2006) (refusing to apply the ELR to fraud claims; *QC Const. Products, LLC v.*

26  *Cohill's Bldg. Specialties, Inc.*, 423 F.Supp.2d 1008, 1015–16 (D. Ariz. 2006) (applying

27  the ELR to fraud claims). However, even if the ELR bars such claims when they are pled

28  in conjunction with contract claims in general, application of the ELR to Adonia

Holding's fraudulent misrepresentation claims at the motion to dismiss stage is premature. Adonia Holding has not yet provided evidence to support its contract claim. Adonia Organics' Motion to Dismiss is, therefore, denied as to Count Four.

### E.    Count Five: Consumer Fraud

Unlike fraudulent misrepresentation, the ELR does not apply to consumer fraud claims under Arizona law. *See Shaw v. CTVT Motors, Inc.*, 232 Ariz. 30, 33, 300 P.3d 907, 910 (Ct. App. 2013) ("Arizona's economic loss rule does not apply to private causes of action under the [Consumer Fraud Act].""). A.R.S. § 44–1522 governs consumer fraud claims, and, under this statute, any person is prohibited from engaging in deceptive or unfair activities "in connection with the sale or advertisement of any merchandise." There has been no analysis by Arizona courts of whether § 44–1522 applies to distributorship agreements like that in the present case.

Although the Ninth Circuit, construing Arizona law, has stated that § 44–1522 does not apply to distributorship agreements, *see Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992), the present case involves more than a simple distributorship agreement. Throughout the FAC, Adonia Holding refers to itself as a reseller of Adonia products. In addition, Adonia Holding alleges that it purchased products from Adonia Organics. These allegations suffice to support a claim of deceptive or unfair activities "in connection with the sale or advertisement of any merchandise" under A.R.S. § 44–1522. *See Nicholas Homes, Inc. v. M & I Marshall & Ilsley Bank, N.A.*, No. CV09-2079-PHX-JAT, 2010 WL 1759453, at *4 (D. Ariz. Apr. 30, 2010) (distinguishing *Sutter Home Winery* and refusing to dismiss a consumer fraud claim under A.R.S. § 44–1522 in a case involving a distributorship agreement when the agreement was "induced by [the defendant's] allegedly deceptive advertising"). Adonia Organics' Motion to Dismiss is, therefore, denied as to Count Five.

### CONCLUSION

Adonia Holding has sufficiently pled all of the claims in its FAC, including the claims raised against Dr. Tahilian, which implicate his community estate.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IT IS THEREFORE ORDERED** that the Motion to Dismiss of Defendants Adonia Organics LLC, Dr. Marc Franco Tahilian, and Jane Doe Franco (Doc. 14.) is **DENIED**.

Dated this 16th day of December, 2014.

G. Murray Snow
United States District Judge